[No. B050142. Second Dist., Div. Three. Sept. 27, 1991.]

CARNIVAL CRUISE LINES, INC., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
MILDRED WILLIAMS, Real Party in Interest.

[No. B050255. Second Dist., Div. Three. Sept. 27, 1991.]

CARNIVAL CRUISE LINES, INC., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
ANTOINETTE SECARD, Real Party in Interest.

## COUNSEL

Graham & James and Allan A. Shenoi for Petitioner.

No appearance for Respondent.

Silver, McWilliams, Stolpman, Mandel, Katzman, Krissman & Elber, Donna Silver, Roman Mosqueda and Miguel P. Inumerable for Real Parties in Interest.

## OPINION

**DANIELSON, J.**—Carnival Cruise Lines, Inc. (Carnival) petitions this court for writs of mandate directing the trial court to vacate its orders denying their motions to dismiss or stay in Williams v. Carnival Cruise Lines, Inc. (L.A. Super. Ct. No. SOC 96347) (*Williams*) and Secard v. Carnival Cruise Lines, Inc. (L.A. Super. Ct. No. SOC 96301) (*Secard*) and to enter new and different orders granting the motions.

We have consolidated the two proceedings since they present identical questions of law and fact.

We grant the petitions insofar as they seek writs of mandate directing the trial court to vacate its orders denying their motions to dismiss or stay the subject actions. The petitions are otherwise denied. As discussed, *post*, we remand the matter for further proceedings on the issue of notice.

## ISSUE PRESENTED

Tickets purchased by plaintiffs in the underlying actions (plaintiffs), for a round-trip cruise from Los Angeles to Mexico on a ship owned and operated by Carnival, contained a forum-selection clause which provided that all disputes arising under or in connection with the ticket contract would be litigated, if at all, in a court located in Florida. The core issue presented is whether that forum-selection clause is enforceable to preclude plaintiffs from pursuing their actions in the Los Angeles, California, Superior Court, for damages sustained by them during their cruise as a result of the alleged negligence of Carnival.

Resolution of that issue depends on whether any of the plaintiffs in *Williams* and *Secard* had sufficient notice of the forum-selection clause prior to entering into the contract for passage. If the trial court, on remand, determines that a particular plaintiff had sufficient notice then the clause is enforceable as to that plaintiff. On the other hand, if the court determines that the plaintiff did not have sufficient notice, then the clause is not enforceable as to that plaintiff.

## FACTUAL AND PROCEDURAL STATEMENT

Plaintiffs assert that they received injuries through the negligence of Carnival during a seven-day sea cruise as passengers on a ship, the M/V Tropicale, owned and operated by Carnival. The voyage allegedly began on or about January 17, 1988, at Port of Los Angeles, was bound for Puerto Vallarta and other places in Mexico, and ended on or about January 24, 1988, at Port of Los Angeles.

In sum, plaintiffs allege that Carnival was negligent in that: (1) it knew of an impending severe storm, but failed to inform plaintiffs of the dangers thereof; (2) it proceeded to leave port despite the storm warning and without taking proper precautions to minimize the effects of the storm; (3) it failed to provide adequate safety equipment, e.g., life jackets and/or life vests for all passengers, or to distribute the safety equipment which was aboard the ship to the passengers; (4) it failed to properly staff the vessel and to train the staff to meet the safety needs of the passengers in an emergency situation; (5) it failed to provide adequate safety instructions and directions to the passengers and crew; (6) it failed properly to inspect the ship and maintain it

in a safe condition, e.g., the port engine and stabilizer did not function properly; (7) it failed to properly maintain, repair, inspect or otherwise control the M/V Tropicale and to assure its seaworthiness prior to and at the time of departure; and (8) it provided tug boat services which caused the M/V Tropicale to hit the dock as it was being assisted in leaving the port.

On September 15, 1989, in *Williams*, Carnival appeared specially and filed a motion to dismiss or stay under Code of Civil Procedure section 410.30.[1] Carnival argued that dismissal or stay of the action was mandated on the ground that plaintiffs had agreed to litigate any controversy arising from the subject voyage in the State of Florida.

On September 25, 1989, a substantially identical special appearance and motion was filed by Carnival in *Secard*.

In support of the motions, Carnival referred to the following provisions in the ticket contracts between itself and plaintiffs:[2]

Clause 3(a) on page 1 of the contract read:

"The acceptance of this ticket by the person or persons named hereon as passengers shall be deemed to be an acceptance and agreement by each of them of all of the terms and conditions of this Passage Contract Ticket."

Clause 8, also on page 1 of the ticket contract, read:

"It is agreed by and between the passenger and the Carrier that all disputes and matters whatsoever arising under, in connection with or incident to this Contract shall be litigated, if at all, in and before a Court located in the State of Florida, U.S.A., to the exclusion of the Courts of any other state or country."

In his supporting declaration, dated September 14, 1989, at Miami, Florida, Bruce A. Jordan (Jordan), an assistant general counsel of Carnival, stated that Carnival is a Panamanian corporation with its principal place of business in Miami, Florida. He further stated that all passenger claims are handled exclusively in its Miami offices.

---

[1] Code of Civil Procedure section 410.30, subdivision (a), provides: "[W]hen a court upon motion of a party or on its own motion finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court shall stay or dismiss the action in whole or in part on any conditions that may be just. The domicile or residence in this state of any party to the action shall not preclude the court from staying or dismissing the action."

[2] The record does not include a copy of any ticket. However, at oral argument, counsel for Carnival supplied the court with a facsimile of the subject tickets, which we have reviewed.

In opposition filed January 31, 1990, the *Williams* plaintiffs asserted the forum-selection clause was unenforceable. They argued that the clause was unreasonable, not reasonably communicated to plaintiffs, and not freely bargained for. They further argued that enforcement of the clause was barred by federal statute (46 U.S.C. § 183(c)) and would violate the principles set forth in *The Bremen* v. *Zapata Off-Shore Co.* (1972) 407 U.S. 1, 18 [32 L.Ed.2d 513, 1907, 92 S.Ct. 1907].

In her opposing declaration dated January 29, 1990, Donna Silver (Silver), an attorney for the *Williams* plaintiffs, stated: "[O]f the 238 plaintiffs, close to two-thirds of them (153) are California residents. Of the remaining 85 plaintiffs, close to one-half (38) are residents of Western states, including Oregon, Washington, Nevada, Arizona, New Mexico and Montana. The remaining 47 plaintiffs are from various Midwest and East coast states, Canada and Hawaii. Not a single plaintiff is a resident of Florida."

She further stated that the one plaintiff claiming awareness of the forum-selection clause prior to departure did not have cancellation insurance. The tickets were subject to cancellation charges by Carnival.

With respect to receipt of tickets, Silver stated: At least 44 of the plaintiffs received their tickets upon actual embarking of the vessel on January 17, 1988. At least five plaintiffs received boarding passes only, no ticket at all. At least six plaintiffs received their tickets on the day of departure, four of whom received them two hours before embarkation, and at least four plaintiffs received the tickets the day before the cruise.

With respect to inconvenience to plaintiffs, Silver stated: At least 30 plaintiffs asserted they are physically unable to travel to Florida due to age and medical problems. At least one-half of the remaining plaintiffs would suffer hardship and inconvenience due to health and medically related problems, dependency of minors and other family members, and work commitments. At least 145 plaintiffs, over one-half of all plaintiffs in *Williams*, contend they are financially unable to pursue their action in Florida.[3]

In opposition filed February 7, 1990, the *Secard* plaintiffs took the position that enforcement of the forum-selection provision would be unreasonable for the reasons that: (1) there was no evidence that the provision was freely bargained for; and (2) plaintiffs would for all practical purposes be

---

[3]On April 3, 1990, Carnival filed objections to the contents of the Silver declaration. In response Silver filed a declaration dated April 9, 1990, in which she stated that the factual information set forth in her declaration above came from her personal review of communications between plaintiffs and herself. Plaintiffs would substantiate the information in question, i.e., paragraphs 4-12, when they are deposed or in response to interrogatories.

deprived of their day in court since enforcement of the provision would be gravely difficult and inconvenient.

In his opposing declaration Miguel P. Inumerable, the *Secard* plaintiffs' attorney, stated that among the witnesses who would be inconvenienced by a Florida forum are the physicians who treated the *Secard* plaintiffs and the employees of the United States Weather Service who reside and are employed in California.

In their respective declarations the *Secard* plaintiffs, Antoinette, Ed, Fred, George, and Joan, each stated that he or she was treated for the injuries sustained during the voyage by Dr. Peter Yatar, of the City of Industry, California, and Dr. Dale Kellon, in Covina, California.

In its reply filed April 3, 1990, in both cases Carnival asserted the forum-selection clause was enforceable. It argued that the passengers had adequate notice of the terms of the contract, including the forum-selection clause, since there was adequate warning of the ticket's terms, and thus, it must be presumed that the passengers consented to the clause. It further argued that enforcement of the clause was not unreasonable or unjust since plaintiffs would have a difficult time showing that they would be denied their day in court in Florida.

In his supporting declaration, executed March 29, 1990, Lawrence D. Winson (Winson),[4] General Counsel and Secretary for Carnival, stated that Carnival chose one specific venue for litigation against it in order to prevent it from being sued in varied and far-flung jurisdictions by thousands of passengers. Carnival inserted the forum-selection clause to create a certainty, not to inconvenience passengers or arbitrarily, so that it would not face global litigation.

Winson further stated that Florida was selected as the venue, because its head office, legal department, and passenger claims processing personnel are all located there. Also located there were seven of its eight vessels which sail from Florida and Caribbean ports.

Winson also declared that if any passenger or travel agent requested Carnival to provide them with a copy of the terms and conditions of the

---

[4]The motions to stay or dismiss were not made on the grounds of lack of personal jurisdiction or forum non conveniens. However, in its petitions Carnival makes some arguments and sets forth statements in the declarations of Winson and Jordon in favor of the enforcement of the forum-selection clause which really pertain only to a claim of forum non conveniens and the bar of lack of personal jurisdiction, e.g., lack of minimum contracts with California. (See, e.g., *Dialysis At Sea, Inc.* v. *Superior Court* (1989) 216 Cal.App.3d 788, 792-796 [263 Cal.Rptr. 71].)

ticket contract in order for them to evaluate the terms and decide whether they wanted to travel with Carnival, Carnival would have provided them with a copy.[5]

On April 12, 1990, following a hearing, the court denied the motions in the *Williams* and *Secard* cases. The court reasoned:

"I cite the case cited by moving party, which is Full-Sight versus Soft-Lenses. First you have a contract [of] adhesion and, in my view, it would be, under that case, both unreasonable and unjust to transfer these cases for the benefit of one defendant in Florida, as opposed to the convenience of two hundred thirty-eight or more plaintiffs in California, where the vessel left a California port, the storm occurred in the Pacific, whatever medical treatment they received on ship was on an emergency basis, and upon the return was rendered here. [¶] This is the logical and the just place for the venue to be laid in this case."[6]

### DISCUSSION

In our prior opinion, *Carnival Cruise Lines, Inc.* v. *Superior Court* (B050142 and B050255 (nonpub. opn.)), filed August 21, 1990, we held that the forum-selection clause in the Carnival ticket contract was not enforceable. In so holding we relied on *Shute* v. *Carnival Cruise Lines* (9th Cir. 1990) 897 F.2d 377. We reasoned: "In the present cases, as in *Shute*, there is no evidence that the forum-selection clause was freely bargained for by the plaintiffs; thus it constitutes an instance of untenable 'overreaching' by Carnival." (*Carnival Cruise Lines, Inc.* v. *Superior Court, supra* (nonpub. opn.)) Also as in *Shute*, we further reasoned that "[a]n independent, alternative basis for holding the forum-selection clause to be unenforceable is our conclusion that enforcement of the clause 'would "be so gravely difficult and inconvenient" that the plaintiffs would "for all practical purposes be deprived of [their] day in court" '. (*Shute* v. *Carnival Cruise Lines, supra*, 897 F.2d at 389, quoting from *The Bremen, supra*, 407 U.S. at p. 18.)" (*Carnival Cruise Lines, Inc.* v. *Superior Court, supra* (nonpub. opn.).)

On November 15, 1990, our Supreme Court denied a petition for review of our prior opinion.

On April 17, 1991, the United States Supreme Court issued its decision in *Carnival Cruise Lines* v. *Shute* (1991) 499 U.S. __ [113 L.Ed.2d 622, 111

---

[5]No evidence was submitted by Carnival with regard to the procedure, if any, for negotiation of the terms of the ticket contract, e.g., the forum-selection clause. At oral argument counsel for Carnival conceded he knew of none.

[6]The case referred to above by the court is *Full-Sight Contact Lens* v. *Soft Lenses, Inc.* (S.D.N.Y. 1978) 466 F.Supp. 71.

S.Ct. 1522], reversing the decision of the Court of Appeal in *Shute, supra*, 897 F.2d 377.

On April 22, 1991, the United States Supreme Court granted a petition for a writ of certiorari and ordered the judgment in this matter vacated. The court also remanded the matter to this court for further consideration in light of its decision in *Carnival Cruise Lines* v. *Shute, supra*, 499 U.S. __.

Based on our review of the Supreme Court's decision in *Shute* we conclude that our original analysis and holding are no longer valid. Nonetheless, we further conclude that the facts of the *Shute* case are different from those in the present cases with respect to one significant issue: whether the plaintiffs had sufficient notice of the forum-selection clause before entering into the contract for passage.

In *Shute*, the Supreme Court announced: "[W]e do not address the question whether respondents had sufficient notice of the forum clause before entering the contract for passage. Respondents essentially have conceded that they had notice of the forum-selection provision. Brief for Respondent 26 ('The respondents do not contest the incorporation of the provisions nor [*sic*] that the forum selection clause was reasonably communicated to the respondents, as much as three pages of fine print can be communicated.'). Additionally, the Court of Appeals evaluated the enforceability of the forum clause under the assumption, although 'doubtful,' that respondents could be deemed to have had knowledge of the clause. See 897 F.2d, at 389 and n. 11." (*Carnival Cruise Lines* v. *Shute, supra*, 499 U.S. __, __ [113 L.Ed.2d 622, 630].)

In contrast, neither the plaintiffs in *Williams* nor the plaintiffs in *Secard* have conceded the sufficiency of the notice of the forum-selection clause.

As reflected in the factual and procedural statement of our present and prior decisions, the issue concerning the awareness of the forum-selection clause was raised in the lower court by the declaration of an attorney for the *Williams* plaintiffs, objections thereto filed by Carnival Cruise Line, and a supplemental declaration of the attorney. (*Carnival Cruise Lines, Inc., supra* (nonpub. opn.); present opn., *ante*, at p. 1023, fn. 3.) However, a review of the record reveals that the trial court did not rule upon the propriety of the attorney's declaration nor did it base its decision on the issue of notice. Moreover, we did not address the notice issue in rendering our prior decision.

We therefore remand the matter for further proceedings before the trial court on the issue of notice. We hold that the forum-selection clause is

unenforceable as to any particular plaintiff if the court determines that such plaintiff did not have sufficient notice of the forum-selection clause prior to entering into the contract for passage. Absent such notice, the requisite mutual consent to that contractual term is lacking and no valid contract with respect to such clause thus exists. (See, e.g., Civ. Code, §§ 1550, 1565, 1580.)

### DECISION

The petitions for writs of mandate are granted insofar as they seek writs of mandate directing the trial court to vacate its orders denying their motions to dismiss or stay the subject actions. The petitions are otherwise denied. The matter is remanded for further proceedings on the issue of notice. The alternative writs, having served their purpose, are discharged.

Klein, P. J., and Croskey, J., concurred.