**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KENNITH SHROYER, individually and
as Representative for all others
similarly situated and the General
Public,

   *Plaintiff-Appellant,*

    v.

NEW CINGULAR WIRELESS SERVICES,
INC., a Delaware corporation;
AT&T CORPORATION,

   *Defendants-Appellees.*

No. 06-55964

D.C. No.
CV-06-01792-R

OPINION

Appeal from the United States District Court
for the Central District of California
Manuel L. Real, District Judge, Presiding

Submitted June 13, 2007*
Pasadena, California

Filed August 17, 2007

Before: Dorothy W. Nelson, Stephen Reinhardt, and
Pamela Ann Rymer, Circuit Judges.

Opinion by Judge Reinhardt;
Concurrence by Judge Rymer

---

*This panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2).

9993

**COUNSEL**

William Weinstein, Wechsler Harwood LLP, New York, New York, for the plaintiff-appellant.

Robert K. Friedl, Kirtland & Packard LLP, El Segundo, California, for the plaintiff-appellant.

Donald M. Falk, Mayer, Brown, Rowe & Maw LLP, Palo Alto, California, for the defendants-appellees.

Evan Tager and Timothy C. Lambert, Mayer, Brown, Rowe & Maw LLP, Washington, DC, for the defendants-appellees.

Michael J. Stortz, Drinker Biddle & Reath LLP, San Francisco, California, for the defendants-appellees.

## OPINION

REINHARDT, Circuit Judge:

In this case, we consider whether a class arbitration waiver in New Cingular Wireless Service Inc.'s standard contract for cellular phone services is unconscionable under California law, and whether the Federal Arbitration Act preempts a holding that the waiver is unenforceable. We hold that the waiver is unconscionable, and, thus, unenforceable, and that the invalidation of the contract provision is not preempted by the Federal Arbitration Act. Accordingly, we reverse the district court's order compelling arbitration.[1]

## I. Procedural and Factual Background

On February 22, 2006, Appellant Kennith Shroyer filed a class action lawsuit in the California Superior Court against Appellees New Cingular Wireless Services, Inc., AT&T Corp. (AT&T), and Does 1 through 100, alleging that he and similarly situated plaintiffs ("the class" or "class members")

---

[1]Our conclusion here is similar to that reached by district judges in the Northern, Central and Southern Districts of California in at least ten other cases. *See Bradberry v. T-Mobile USA, Inc.*, No. 06-6567, 2007 U.S. Dist. LEXIS 34826 (N.D. Cal. Apr. 27, 2007) (Wilken, J.); *Winig v. Cingular Wireless, LLC*, 06-4297, 2006 U.S. Dist. LEXIS 73137 (N.D. Cal. Sept. 27, 2006) (Chesney, J.); *Hoffman v. Cingular Wireless, LLC*, No. 06-1021, 2006 U.S. Dist. LEXIS 79067 (S.D. Cal. Oct. 26, 2006) (Whelan, J.); *Page v. Verisign, Inc.*, No. 06-0906 (S.D. Cal. Aug. 3, 2006) (Miller, J.); *Herrington v. Verisign, Inc.*, No. 1915 (S.D. Cal. Aug. 3, 2006) (Miller, J.); *Stern v. Cingular Wireless Corp.*, 453 F. Supp. 2d 1138 (C.D. Cal. July 24, 2006) (Snyder, J.); *Janda v. T-Mobile, USA, Inc.*, No. 05-3729, 2006 U.S. Dist. LEXIS 15748 (N.D. Cal. Mar. 17, 2006) (White, J.); *Ford v. Verisign, Inc.*, No. 05-0819, 2006 U.S. Dist. LEXIS 88856 (Mar. 8, 2006) (Miller, J.) (discussing the court's December 19, 2005 order); *Cervantes v. Pacific Bell Wireless*, No. 05-1469, 2006 U.S. Dist. LEXIS 89198 (S.D. Cal. Mar. 8, 2006) (Miller, J.) (discussing the court's January 10, 2006 order); *Laster v. T-Mobile United States, Inc.*, 407 F. Supp. 2d 1181 (S.D. Cal. Nov. 30, 2005) (Sabraw, J.).

had suffered injuries as a result of the 2004 merger between Cingular Wireless LLC and AT&T Wireless Services, Inc. (AT&T) that created New Cingular Wireless Services, Inc. (Cingular), and in particular by the actions of Cingular subsequent to the merger. Shroyer pled seven causes of action based on California state statutes and common law, including (1) unfair competition under Cal. Bus. & Prof. Code § 17200, et seq.; (2) untrue and misleading advertising under Cal. Bus. & Prof. Code § 17500; (3) violations of the Consumers Legal Remedies Act, Cal. Civil Code § 1750; (4) breach of contract; (5) breach of the covenant of good faith and fair dealing; (6) fraud and deceit under Cal. Civil Code § 1710; and (7) unjust enrichment. Shroyer requested damages, declaratory relief, and injunctive relief.

Shroyer's complaint alleges that when AT&T and Cingular merged the cellular phone services received by AT&T's customers deteriorated significantly. Simultaneously, Cingular sought to induce the customers of AT&T to transfer their service plans and equipment from AT&T to Cingular in order to increase the company's profits. When class members complained about the new problems associated with their AT&T service plans, Cingular allegedly told them that it could provide members with a "chip" that would restore their service quality. To receive the chip, however, class members would be required to extend their current contracts by entering into "Wireless Service Agreements" (Agreements) with Cingular, and, thus, to switch their service plans from AT&T to Cingular. Cingular also allegedly told class members that when they extended their contracts with Cingular, they would not be able to retain the more favorable rates contained in their existing AT&T contacts.

Shroyer initially subscribed to AT&T service plans in 2000 and 2003. After the merger, he complained about his service, and Cingular told him that it would be improved if he signed a new contract with Cingular. On January 2, 2005, Shroyer switched his two cellular phone accounts from AT&T to

Cingular by entering into new Agreements with Cingular. Shroyer, like other class members who entered into Agreements with Cingular, executed an electronic signature over the telephone to assent to the terms of the Agreements. Shroyer selected the answer "Yes" in response to the statement "You agree to the terms as stated in the Wireless Service Agreement and terms of service."

The form contract to which Shroyer assented states that the Agreement incorporates by reference Cingular's Terms and Conditions Booklet, "including its binding arbitration clause," and that at the time the consumer signs the Agreement he has read and agrees to be bound by the Agreement and the terms in the Booklet, "including . . . [the] Arbitration provisions." The booklet referred to by the Agreement includes an arbitration clause, which states that "Cingular and you . . . agree to arbitrate all disputes and claims . . . arising out of or relating to this Agreement, or to any prior oral or written agreement, for Equipment or services between Cingular and you." The clause further states that the arbitration will be governed by the procedures of the American Arbitration Association (AAA) and administered by AAA.

Most important, the arbitration provision contains a class arbitration waiver that bars individuals from bringing representative claims:

> You and Cingular agree that YOU AND CINGU-LAR MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, and not as a plaintiff or class member in any purported class or representative proceeding. Further, you agree that the arbitrator may not consolidate proceedings of more than one person's claims, and may not otherwise preside over any form of representative or class proceeding, and that if this specific proviso is found to be unenforceable, then the

entirety of this arbitration clause shall be null and void.

One month after Shroyer filed his complaint, Cingular removed the action to the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 1441, 1446, and 1453, asserting subject matter jurisdiction under the Class Action Fairness Act of 2005 (CAFA), Pub. L. 109-2, 119. Stat. 14 (2005), 28 U.S.C. § 1332(d). Cingular then promptly filed a motion to compel arbitration and stay further proceedings in the litigation pursuant to § 3[2] and § 4[3] of the Federal Arbitration Act (FAA), 9 U.S.C. §§ 3-4. It asserted that the arbitration clause is valid and enforceable under § 2 of the Federal Arbitration Act[4] and that the clause is neither procedurally nor substantively unconscionable. Alternatively, it asserted that a holding that the clause is unconscionable

---

[2]Section 3 provides that "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3.

[3]Section 4 provides that "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4.

[4]Section 2 provides that "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

would be expressly preempted by § 2 of the Federal Arbitration Act, as well as impliedly preempted, because such a holding would frustrate the purpose of the Act.

After hearing oral argument, District Judge Manuel Real announced that he would grant Cingular's motion to compel arbitration and dismiss the action without prejudice. Ten days later, Cingular filed a seven-page proposed order — "[Defendant's Proposed] Order Compelling Arbitration and Dismissing the Action Without Prejudice" — that contained virtually all of the legal arguments and factual allegations that Cingular had made in its memorandum to support its motion to compel arbitration, and nothing else. Shortly thereafter, Judge Real entered the proposed order without making any changes to it. Shroyer filed a timely notice of appeal.

## II.   Jurisdiction and Standard of Review

The district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d), and we have appellate jurisdiction over its order compelling arbitration and dismissing the action without prejudice pursuant to 9 U.S.C. § 16(a)(3). *See Sanford v. MemberWorks, Inc.*, 483 F.3d 956, 961 (9th Cir. 2007) (citing *Interactive Flight Techs., Inc. v. Swissair Swiss Air Transp. Co.*, 249 F.3d 1177, 1179 (9th Cir. 2001)).

We review the district court's order de novo. *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007) (citing *Circuit City Stores, Inc. v. Mantor*, 417 F.3d 1060, 1063 (9th Cir. 2005)); *accord Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1267 (9th Cir. 2006) (en banc) ("The validity and scope of an arbitration clause are reviewed de novo." (citing *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 936 (9th Cir. 2001))).

## III.    Discussion

### A.    Unconscionability

**[1]** Section 2 of the Federal Arbitration Act provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "It is well-established that unconscionability is a generally applicable contract defense, which may render an arbitration provision unenforceable." *Nagrampa*, 469 F.3d at 1280 (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686-87 (1996)). Both Shroyer and Cingular agree that we should apply California contract law to determine whether the class arbitration waiver is unconscionable. Applying that law to the class arbitration waiver at issue here, we conclude that under the test set forth in *Discover Bank v. Superior Court of Los Angeles*, 36 Cal. 4th 148 (Cal. 2005), the waiver is both procedurally and substantively unconscionable and, therefore, unenforceable. Accordingly, we agree with Shroyer that the district court erred in holding that the class arbitration waiver is neither procedurally nor substantively unconscionable.

**[2]** Under California law, a contract provision is unenforceable due to unconscionability only if it is both procedurally and substantively unconscionable. *Nagrampa*, 469 F.3d at 1280 (citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (Cal. 2000)); *see also Discover Bank*, 36 Cal. 4th at 160. But the two types of unconscionability "need not both be present to the same degree." *Nagrampa*, 469 F.3d at 1280. California courts apply a "sliding scale," so that " 'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' " *Id.* (quoting *Armendariz*, 24 Cal. 4th at 114).

In *Discover Bank*, in which the California Supreme Court held that a class arbitration waiver in a consumer credit card

agreement was unconscionable, the court "recapitulate[d]" its "principles of unconscionability":

> the doctrine has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results. The procedural element of an unconscionable contract generally takes the form of a contract of adhesion, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it. Substantively unconscionable terms may take various forms, but may generally be described as unfairly one-sided.

36 Cal. 4th at 160 (citations and internal quotations omitted).

[3] On two prior occasions, we have held that class arbitration waivers in contracts of adhesion are both procedurally and substantively unconscionable. *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1176 (9th Cir. 2003) (holding that a class arbitration waiver in an employment contract was unconscionable); *Ting v. AT&T*, 319 F.3d 1126, 1150 (9th Cir. 2003) (holding that a class arbitration waiver in a contract for AT&T telephone services was unconscionable). In both *Ingle* and *Ting*, we relied heavily upon *Szetela v. Discover Bank*, 97 Cal. App. 4th 1094 (2002), in which the California Court of Appeal "found procedural unconscionability in the adhesive nature of the contract" for credit card services, and "found substantive unconscionability in the imposition of a one-sided and oppressive class action waiver provision." *Discover Bank*, 36 Cal. 4th at 159-60 (describing *Szetela*, 97 Cal. App. 4th at 1100-01, and noting that *Ingle* and *Ting* relied on *Szetela*); *see also Ingle*, 328 F.3d at 1171-72, 1176 (stating that Circuit City's class arbitration waiver "is manifestly and shockingly one-sided" given that a company like Circuit City would

never "bring a class proceeding against an employee"); *Ting*, 319 F.3d at 1149-50.

**[4]** Subsequent to *Ingle* and *Ting*, the California Supreme Court in *Discover Bank* expressed approval of the California Court of Appeal's decision in *Szetela*, and affirmed that — as we had concluded in both *Ingle* and *Ting* — class action waivers, including those in arbitration clauses, may be unconscionable under California law, although not necessarily in all cases. *Discover Bank*, 36 Cal. 4th at 162.

*Discover Bank* involved a plaintiff whose credit card agreement contained a class arbitration waiver. The plaintiff alleged that the company had misrepresented the date by which it needed to receive consumers' payments in order to avoid charging late payment fees. *Id.* at 152. The trial court enforced the arbitration agreement, but permitted classwide arbitration because it concluded that the class arbitration provision was unconscionable. *Id.* The California Court of Appeal reversed on the ground that the trial court's holding of unconscionability was preempted by the Federal Arbitration Act. *Id.* at 153. Reversing the Court of Appeal, the California Supreme Court "conclude[d] that, at least under some circumstances, the law in California is that class action waivers in consumer contracts of adhesion are unenforceable, whether the consumer is being asked to waive the right to class action litigation or the right to classwide arbitration." *Id.*[5] Moreover, the court explained the circumstances in which a class action waiver in a consumer contract will be procedurally and substantively unconscionable under California law:

> We do not hold that all class action waivers are necessarily unconscionable. But when the waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties

---

[5]It also concluded that the "Court of Appeal [wa]s incorrect that the FAA preempts California law in this respect." *Id.*; *see also id.* at 163-73.

predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money, then, at least to the extent the obligation at issue is governed by California law, the waiver becomes in practice the exemption of the party "from responsibility for [its] own fraud, or willful injury to the person or property of another." (Civ. Code, § 1668.) Under these circumstances, such waivers are unconscionable under California law and should not be enforced.

*Id.* at 162.

**[5]** The California Courts of Appeal have construed *Discover Bank* as providing for a three-part inquiry in order to determine whether a class action waiver in a consumer contract is unconscionable. *See Cohen v. DirecTV, Inc.*, 142 Cal. App. 4th 1442, 1451-53 (2006); *Klussman v. Cross Country Bank*, 134 Cal. App. 4th 1283, 1297 (2005); *Aral v. EarthLink, Inc.*, 134 Cal. App. 4th 544, 556-57 (2005). Under this three-part inquiry, courts are required to determine: (1) whether the agreement is " 'a consumer contract of adhesion' " drafted by a party that has superior bargaining power; (2) whether the agreement occurs " 'in a setting in which disputes between the contracting parties predictably involve small amounts of damages' "; and (3) whether " 'it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money.' " *Cohen*, 142 Cal. App. 4th at 1151-53 (quoting *Discover Bank*, 36 Cal. 4th at 162-63); *see also Klussman*, 134 Cal. App. 4th at 1297 (summarizing the three parts identified in *Discover Bank*). Although there are most certainly circumstances in which a class action waiver is unconscionable under California law despite the fact that all three parts of the *Discover Bank* test are not satisfied, it is unnecessary to explore those circum-

stances here because the instant action satisfies them all and cannot be distinguished from *Discover Bank*. *Cohen*, 142 Cal. App. 4th at 1455.

[6] First, as in *Discover Bank*, Cingular's Agreements for cellular phone services are "consumer" contracts. They are also "contracts of adhesion." Under California law, "[a] contract of adhesion is defined as 'a standardized contract, imposed upon the subscribing party without an opportunity to negotiate the terms.' " *Nagrampa*, 469 F.3d at 1281 (quoting *Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001)). There is no dispute that the Cingular Agreements, which refer to the Terms of Service, constitute standardized contracts. In addition, as Cingular conceded before the district court, it did not offer customers such as Shroyer an opportunity to negotiate the terms of the Agreements or to sign Agreements without class arbitration waivers. Instead, it presented the customers with take-it-or-leave-it standardized contracts, which it had prepared, forcing customers who would not accept a class action waiver to not extend their Agreements with AT&T/Cingular. Finally, compared to the individual class members, Cingular had substantially greater bargaining power as a large, sophisticated corporation, particularly since many class members faced termination fees and the costs of obtaining replacement services if they did not sign the Agreements with Cingular. *See Nagrampa*, 469 F.3d at 1282-84.

[7] Second, the Cingular Agreements occurred "in a setting in which disputes between the contracting parties predictably involve small amounts of damages." *Discover Bank*, 36 Cal. 4th at 162. In *Discover Bank*, the plaintiff sought to recover for a $29 fee charged to him for late payments and other finance charges. *Id.* at 154. Here, the monthly service fee that Cingular charged to Shroyer was $59.99 per month for his first account, and $9.99 per month for his second account. Although Shroyer's complaint alleges that the class members are entitled to several types of damages, the damages stem

primarily from the decline in the quality of service under customers' monthly service plans, the cost of terminating existing service Agreements, and the cost of obtaining new cellular phone services with other companies. At most, Shroyer and similarly situated class members suffered individual damages in the hundreds of dollars, an objectively small amount, and a smaller figure than the $1,000 amount that the Court of Appeal in *Cohen* found to be a small enough sum to satisfy the second element of the *Discover Bank* test. *See Cohen*, 142 Cal. App. 4th at 1452 (holding that "[d]amages that may or may not exceed $1,000 do not take DirecTV's class action waiver outside 'a setting in which disputes between the contracting parties predictably involve small amounts of damages' " (quoting *Discover Bank*, 36 Cal. 4th at 162)); *see also Gatton v. T-Mobile USA, Inc.*, 152 Cal. App. 4th 571, 587 (2007) (following *Cohen* and holding that a claim of $200 for terminating phone service is not large enough to distinguish the case from *Discover Bank*).

**[8]** Third, Shroyer's complaint plainly "allege[s] that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money." *Discover Bank*, 36 Cal. 4th at 162. Shroyer's complaint alleges that for the purpose of increasing profits, Cingular took the deliberate action of inducing thousands of AT&T customers to enter into Cingular Agreements by misrepresenting to customers that their services would be improved only if they would enter into contract extensions with Cingular. The gravamen of Shroyer's complaint is that Cingular undertook a fraudulent scheme, and, in fact, one of his causes of action is for fraud and deceit. *Cohen*, 142 Cal. App. 4th at 1453; *Aral*, 134 Cal. App. 4th at 557 ("Although Aral did not allege fraud, the gravamen of the complaint is that numerous consumers were cheated out of small sums of money through deliberate behavior.").

Because all three parts of the *Discover Bank* test are satisfied, Cingular's class arbitration waiver is both procedurally

and substantively unconscionable, and cannot be enforced. *Discover Bank*, 36 Cal. 4th at 163.

Cingular raises several arguments regarding why its Agreements are neither procedurally nor substantively unconscionable, and how its arbitration clause differs from the clause in *Discover Bank*. We reject all its arguments.

Cingular first argues that there was no procedural unconscionability because after *Discover Bank* the California Courts of Appeal have stated that "[t]here can be no 'oppression' establishing procedural unconscionability, even assuming unequal bargaining power and an adhesion contract, when the customer has meaningful choices: '[A]ny claim of 'oppression' may be defeated if the complaining party has reasonably available sources of supply from which to obtain desired goods or services free of the terms claimed to be unconscionable.' " *Wayne v. Staples, Inc.*, 135 Cal. App. 4th 466, 482 (2006) (quoting *Dean Witter Reynolds, Inc. v. Super. Ct.*, 211 Cal. App. 3d 758, 768 (1989)). Cingular also points to *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1320 (2005), and *Crippen v. Central Valley RV Outlet, Inc.*, 124 Cal. App. 4th 1159, 1165 (2004), and contends that Shroyer has failed to demonstrate that he and the class members lacked "meaningful alternatives" to the arrangements offered by Cingular.

In three opinions subsequent to both *Discover Bank* and all of the cases to which Cingular cites, we have rejected Cingular's "meaningful alternatives" or "marketplace alternatives" argument. *See Douglas v. U.S. Dist. Court for the Central Dist. of Cal.*, ___ F.3d ___, No. 06-75424, 2007 U.S. App. LEXIS 17061, at * 9-*10 (9th Cir. July 18, 2007) (per curiam); *O'Melveny & Myers*, 485 F.3d at 1074-75; *Nagrampa*, 469 F.3d at 1283. In *Nagrampa*, after reviewing California case law, this court, sitting en banc, "noted that California 'has rejected the notion that the availability . . . of substitute . . . services *alone* can defeat a claim of procedural

unconscionability.' " *Douglas*, ___ F.3d ___ (quoting *Nagrampa*, 469 F.3d at 1283); *accord O'Melveny & Myers*, 485 F.3d at 1074-75 (same). Although there is clearly some disagreement among the California Courts of Appeal over this issue, *compare Villa Milano Homeowners Ass'n v. Il Davorge*, 84 Cal. App. 4th 819, 827 (2000), and *Szetela*, 97 Cal. App. 4th at 1100, *with Wayne*, 135 Cal. App. 4th at 482, we have consistently followed the courts that reject the notion that the existence of "marketplace alternatives" bars a finding of procedural unconscionability. *See, e.g.*, *Nagrampa*, 469 F.3d at 1283; *Ingle*, 328 F.3d at 1172 ("We follow the reasoning in *Szetela* . . . in which the California Court of Appeal held that the availability of other options does not bear on whether a contract is procedurally unconscionable."). In fact, in a recent decision finding a cellular phone company's class arbitration waiver unconscionable, the California Court of Appeal held that "absent unusual circumstances, use of a contract of adhesion establishes a minimal degree of procedural unconscionability notwithstanding the availability of market alternatives," and explained that "[t]he Ninth Circuit, sitting en banc in *Nagrampa* [ ], reached the same conclusion." *Gatton*, 152 Cal. App. 4th at 585.

Thus, contrary to Cingular's contention, a contract may be procedurally unconscionable under California law when the party with substantially greater bargaining power "presents a 'take-it-or-leave it' contract to a customer—even if the customer has a meaningful choice as to service providers." *Douglas*, ___ F.3d ___ (holding in a case involving a class action waiver in a contract for long distance telephone services that the district court erred when it concluded that the waiver was not procedurally unconscionable on the basis of the availability of "meaningful alternative choices for telephone service" (citing *Nagrampa*, 469 F.3d at 1284) (finding sufficient evidence of oppression to establish procedural unconscionability because the franchisor "had overwhelming bargaining power, drafted the contract, and presented it to [the franchisee] on a

take-it-or-leave-it basis")))); *see also Ting*, 319 F.3d 1148; *Discover Bank*, 36 Cal. 4th at 160.

Next, Cingular contends that the class arbitration waiver at issue here is not substantively unconscionable because, unlike the waiver in *Discover Bank*, it does not operate to "insulate a party from liability that otherwise would be imposed under California law," or exempt Cingular "from responsibility for [its] own fraud, or willful injury to the person or property of another." 36 Cal. 4th at 161. The main difference, according to Cingular, is that under its arbitration clause Cingular pays for the full cost of arbitration — so long as a claim is not brought under circumstances that would result in sanctions under the standard in Rule 11(b) of the Federal Rules of Civil Procedure — and plaintiffs who receive awards that are equal to or greater than their demands receive attorneys' fees. As a result, Cingular asserts that the arbitration clause does not deter customers from arbitrating individual small-value claims and does not insulate Cingular from liability.

Cingular's attempt to distinguish *Discover Bank* based on the availability of attorneys' fees and arbitration costs is without merit. The California Supreme Court in *Discover Bank* rejected "the rationale . . . that the potential availability of attorney fees to the prevailing party in arbitration or litigation ameliorates the problem posed by such class action waivers." 36 Cal. 4th at 162 (citations omitted). As the court reasoned, "[t]here is no indication . . . that, in the case of small individual recovery, attorney fees are an adequate substitute for the class action or arbitration mechanism." *Id.* This rationale applies with equal force to arbitration costs, which are almost always far less than attorneys' fees.[6] Contrary to Cingular's

---

[6]As Cingular notes, under the policy in *Discover Bank*, the cost to the plaintiff of participating in individual consumer arbitration would be $125 through JAMS or $100 through the National Arbitration Forum. These one-time fixed costs represent only a fraction of the cost of hiring a competent attorney for an hour of legal services.

contention, the court was concerned that when the potential for individual *gain* is small, very few plaintiffs, if any, will pursue individual arbitration or litigation, which greatly reduces the aggregate liability a company faces when it has exacted small sums from millions of consumers. *See id.* at 158-62. It did not suggest that a waiver is unconscionable only when or because a plaintiff in arbitration may experience a net loss (including attorneys' fees and costs).

**[9]** Because Cingular has failed to distinguish its class arbitration waiver from the waiver in *Discover Bank*, we hold that the former is unconscionable and unenforceable under California law. In addition, because the class arbitration waiver is unenforceable, we must also hold that the entire arbitration clause is void. Cingular's arbitration provision has a non-severability clause, which states that if the "specific proviso" that "the arbitrator may not . . . preside over any form of a representative or class proceeding," "is found to be unenforceable, then the *entirety of this arbitration clause* shall be null and void." (emphasis added). Accordingly, here, the entire arbitration clause is void and arbitration cannot be compelled under the Federal Arbitration Act.

## B.   Preemption

Having concluded that the district court erred in holding that the Cingular class arbitration waiver is not unconscionable, we turn to its alternative holding that a finding that the waiver is unconscionable would be expressly and impliedly preempted by the Federal Arbitration Act. Again, we conclude that the district court erred. The Federal Arbitration Act does not bar federal or state courts from applying generally applicable state contract law principles and refusing to enforce an unconscionable class action waiver in an arbitration clause.

### i.   Express Preemption

**[10]** Cingular contends that the district court correctly held that a finding that Cingular's arbitration provision is uncon-

scionable under California law would be expressly preempted by the Federal Arbitration Act because such a finding would "fall outside Section 2's saving clause for 'grounds as exist at law or in equity for the revocation of any contract.' " (quoting 9 U.S.C. § 2). It asserts that the unconscionability principles applied in *Discover Bank* — the same principles that we have applied here to find a provision of Cingular's arbitration clause to be unconscionable — "subject arbitration clauses to special scrutiny," *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 167 (5th Cir. 2004), and, therefore, results in preemption under the rule set forth in *Perry v. Thomas*, 482 U.S. 483 (1987) and reaffirmed in *Doctor's Assocs.*, 517 U.S. 681. *Perry* held that "state law, whether of legislative or judicial origin, is applicable [under § 2 of the Federal Arbitration Act and not preempted] *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally," whereas "[a] state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with this requirement of § 2" and is preempted. *Perry*, 482 U.S. at 492 n.9; *see also Doctor's Assocs.*, 517 U.S. at 685, 687 ("Courts may not . . . invalidate arbitration agreements under state laws applicable *only* to arbitration provisions." (citation omitted)).

The California Supreme Court in *Discover Bank* soundly rejected this very same express preemption argument that Cingular now makes, 36 Cal. 4th at 163-66, and we have done so in two prior decisions that held that class action waivers were unconscionable under California law and applied the same generally applicable California unconscionability principles as the California court in *Discover Bank*. *Ingle*, 328 F.3d at 1176 n.15; *Ting*, 319 F.3d at 1150 n.15. The rule announced in *Discover Bank* is simply a refinement of the unconscionability analysis applicable to contracts generally in California, as discussed in *Armendariz v. Foundation Health Psychcare Services, Inc.*, 24 Cal. 4th 83 (Cal. 2000). As we explained in *Ingle*, "the *Armendariz* court applied ordinary principles of contract law in evaluating the arbitration agree-

ment in that case" and its analysis "was fully consistent with federal law." 328 F.3d at 1170 n.3; *see also Am. Online, Inc. v. Super. Ct.*, 90 Cal. App. 4th 1, 17-18 (2001) (refusing to enforce forum selection clause that effectively waived class action relief under the California Consumers Legal Remedies Act). Moreover, as we explained in *Ting*,

> [b]ecause unconscionability is a generally applicable contract defense, it may be applied to invalidate an arbitration agreement without contravening § 2 of the FAA. *See Doctor's Assocs.*, 517 U.S. at 687[ ]. We recognize . . . that the FAA preempts state laws of limited applicability . . . but we follow well-settled Supreme Court precedent in rejecting the proposition that unconscionability is one of those laws. *See id.* at 686-87 (stating that the Act "declares that state law may be applied if that law arose to govern issues concerning validity, revocability, and enforceability of contracts generally," and holding that "generally applicable contract defenses, such as fraud, duress or unconscionability, may be applied to invalidate arbitration agreements without contravening" the FAA) (emphasis added).

319 F.3d at 1150 n.15; *see also Ingle*, 328 F.3d at 1176 n.15 (stating that "[w]e again reject the [Court of Appeal's] reasoning in *Discover Bank*" — reasoning which the California Supreme Court disavowed in reversing the Court of Appeal); *Circuit City Stores v. Adams*, 279 F.3d 889, 895 (9th Cir. 2002).

**[11]** We see no reason to revisit *Ingle* and *Ting*, both of which plainly foreclose Cingular's express preemption argument, and Cingular offers no basis upon which to distinguish these controlling cases. However, we note that the explanation in *Discover Bank* that "the principle that class action waivers are, under certain circumstances, unconscionable as unlawfully exculpatory is a principle of California law that does not

specifically apply to arbitration agreements, but to contracts generally," *Discover Bank*, 36 Cal. 4th at 165, provides subsequent confirmation that our view of California contract law was sound and that *Ingle* and *Ting* were correct in holding that California contract law may be applied to invalidate a class arbitration waiver under § 2 of the Federal Arbitration Act.

### ii.    Conflict Preemption

**[12]** Conflict preemption, a form of implied preemption, exists if compliance with both federal and state law is impossible, or "where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *Quicken Loans, Inc. v. Wood*, 449 F.3d 944, 949 (9th Cir. 2006) (quoting *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992)). However, the fact that there is "[t]ension between federal and state law is not enough to establish conflict preemption." *Incalza v. Fendi N. Am., Inc.*, 479 F.3d 1005, 1010 (9th Cir. 2007) (citing *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 256 (1984)). As a result, we will find conflict preemption only in " 'those situations where conflicts will necessarily arise.' " *Id.* (quoting *Goldstein v. California*, 412 U.S. 546, 554 (1973)).

Cingular does not contend that the application of *Discover Bank* renders compliance with the Federal Arbitration Act impossible. Instead, it urges us to conclude, as the district court did, that "a broad reading" of *Discover Bank* that invalidates its allegedly "consumer-friendly" arbitration clause "would 'stand as an obstacle to the accomplishment and execution of the full purposes and objective of Congress' in enacting the [Federal Arbitration Act] and would be preempted under the doctrine of conflict preemption." (quoting *United States v. Locke*, 529 U.S. 89, 109 (2000)).

To determine whether California's unconscionability principles stand as an obstacle to the Federal Arbitration Act, we

must first identify the purposes and objectives underlying that Act. As we have stated, "encouraging alternative dispute resolution outside the courtroom was the principal motivation behind passage of the Federal Arbitration Act." *Schoenduve Corp. v. Lucent Techs., Inc.*, 442 F.3d 727, 730 (9th Cir. 2006) (citing *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) ("[The FAA's] 'purpose was to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts.' " (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)))). Because such was the FAA's purpose, "[i]t simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms," *Volt Info. Scis. Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989), but "not more so." *Id.* (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967) ("As the 'saving clause' in § 2 indicates, the purpose of Congress in 1925 was to make arbitration agreements as enforceable as other contracts, but not more so.")).

Another purpose of the Federal Arbitration Act is "the efficient and expeditious resolution of claims," *Sink v. Aden Enters., Inc.*, 352 F.3d 1197, 1201 (9th Cir. 2003) (citing H.R. Rep. No. 96, 68th Cong., 1st Sess., 2 (1924); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219-20 (1985)), although the Supreme Court has "reject[ed] the suggestion that [such was] the *overriding* goal of the [Federal] Arbitration Act." *Dean Witter*, 470 U.S. at 219 (emphasis added).[7]

---

[7]Arbitration furthers the purpose of efficiency because it mitigates some of the "strict procedural requirements that govern litigation in federal courts," and "offers flexibility, an expeditious result, and is relatively inexpensive when compared to litigation." *Schoenduve*, 442 F.3d at 731 (citing *Gilmer*, 500 U.S. at 31 ("[B]y agreeing to arbitrate, a party 'trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration.' " (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)))).

Cingular contends that applying *Discover Bank* to require companies to permit class arbitration will undermine these purposes. It argues that most companies will choose not to arbitrate at all, if faced with the requirement of class arbitration, because the cost and complexity of arbitration would increase, as would the risk of an unfavorable and largely unreviewable decision with respect to an entire class of consumers. In particular, Cingular believes that class arbitration eliminates the benefits of arbitration, including "speed, simplicity, cost savings, informality, and reduced adversariality," because many of the features of Federal Rule of Civil Procedure 23 are incorporated into class arbitration. We find no basis for or merit to these arguments.

First, although conflict preemption "can exist even when Congress has chosen to include an express preemption clause in a statute" or a savings clause, *Nathan Kimmel, Inc. v. DowElanco*, 275 F.3d 1199, 1204 (9th Cir. 2002) (citing *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995)), the fact that § 2 expressly permits a court to decline enforcement of an arbitration agreement on grounds that exist at law or in equity for revoking a contract, such as unconscionability, strongly suggests that Congress did not contemplate that implied preemption principles would be applied to mandate the opposite result. *Freightliner*, 514 U.S. at 289; *cf. Geier v. Am. Honda Motor Co., Inc.*, 529 U.S. 861, 872 (2000); *see also Ting*, 319 F.3d at 1152 ("the Supreme Court's generalized statements on arbitration do not override the FAA's particular rule, which obtains here and which is well-settled: '[G]enerally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2.' " (quoting *Doctor's Assocs.*, 517 U.S. at 687)).[8]

---

[8]Nevertheless, we acknowledge that Cingular does not bear a "special burden" to demonstrate conflict preemption merely because § 2 of the Federal Arbitration Act includes a savings clause, *Geier*, 529 U.S. at 873, and we impose no such burden.

**[13]** Second, the Federal Arbitration Act's purpose of reversing hostility to arbitration and placing arbitration agreements on the *same footing* as ordinary contracts does not appear to be frustrated or undermined in any way by a holding that class arbitration waivers in contracts of adhesion, like class action waivers in such contracts, are unconscionable. The California Supreme Court in *Discover Bank* placed arbitration agreements with class action waivers on the *exact same footing* as contracts that bar class action litigation outside the context of arbitration. 36 Cal. 4th at 165-66. To hold that California unconscionability law may be applied only to invalidate a class action waiver, but not a class arbitration waiver, would place arbitration agreements on a different footing than other contracts, in direct contravention of this principal purpose of the Federal Arbitration Act. *See Scott v. Cingular Wireless*, 161 P.3d 1000, 1008 (Wash. 2007) ("Congress simply requires us to put arbitration clauses on the *same* footing as other contracts, not make them the special favorites of the law." (citing 9 U.S.C. § 2)).

Third, to the extent that California law requires Cingular to permit its consumers to bring class *arbitration* proceedings, it is actually "encouraging alternative dispute resolution outside the courtroom." *Schoenduve*, 442 F.3d at 730. As other courts have noted in rejecting Cingular's conflict preemption argument, Cingular offers no authority or support for the main premise of its argument that the purposes and objectives of the Federal Arbitration Act encourage individual arbitration and disfavor class arbitration. *Scott*, 161 P.3d at 1008; *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 262 (Ill. 2006). In this respect, we agree with the Illinois Supreme Court that "[t]he FAA does not require state courts, when applying state law to a question of the enforceability of a particular contract, to necessarily reach an outcome that encourages individual arbitration." *Kinkel*, 857 N.E.2d at 262; *accord Scott*, 161 P.3d at 1008 (stating that "we see no reason why the purposes of favoring individual arbitration would not equally favor class-wide arbitration").

Fourth, we reject Cingular's contention that class proceedings will reduce the efficiency and expeditiousness of arbitration in general. If anything, when millions of consumers (or hundreds of thousands, or even lesser numbers) seek compensation based on the same legal theories and factual allegations, a class arbitration proceeding is simpler, cheaper, and faster for both the consumers and the defendant company, particularly when one considers the enormous administrative costs and attorneys' fees that a company faces in defending an extremely large number of individual claims. Similarly, because the use of class proceedings will enable far greater numbers of individuals to take part in and benefit from arbitration, we conclude that class arbitrations further the FAA's purpose of encouraging alternative dispute resolution.

There is no reason to believe that the principal consideration of judicial economy that underlies the class action mechanism in Rule 23 would not operate similarly in the context of class arbitration. Under the class arbitration rules adopted by the American Association of Arbitration, a class proceeding may not go forward unless the arbitrator makes many of the same determinations that a judge is required to make with respect to a class action under Rule 23(a), including numerosity, commonality, typicality, and the adequacy of the representatives and their counsel. *See* American Arbitration Association, Supplementary Rules for Class Arbitrations, Rule 4 (2003), http://www.adr.org/sp.asp?id=21936. In addition, the AAA requires that the arbitrator determine that common questions of law or fact "predominate over any questions affecting only individual members, and that a class arbitration is superior to other available methods for the fair and efficient adjudication of the controversy." *Id.* As the Supreme Court has noted, inclusion of the predomination and superiority standards in a "qualification-for-certification list" serves to "cover cases 'in which a class action would achieve economies of time, effort, expense.' " *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (quoting Adv. Comm. Notes, 28 U.S.C. App., p. 697); *see also Phillips Petroleum Co. v.*

*Shutts*, 472 U.S. 797, 809 (1985) ("Modern plaintiff class actions . . . permit[ ] litigation of a suit involving common questions when there are too many plaintiffs for proper joinder. Class actions also may permit the plaintiffs to pool claims which would be uneconomical to litigate individually."). Therefore, when an arbitrator determines that all of the prerequisites for class arbitration are satisfied, a class proceeding will meet the requirement that it be a superior means of arbitration for the greatest number of individuals and will foster, not hamper, the efficiency and expeditious nature of arbitration.[9]

Because we do not foresee class arbitration increasing the average cost of arbitration for large numbers of small-value claims, either for companies or consumers, and it may actually reduce the cost per claim, Cingular's reliance on *Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119 (9th Cir. 2005), is misplaced. In *Grunwald*, we held that the Securities and Exchange Act of 1934 impliedly preempts the ethical standards that California state law imposed on National Association of Securities Dealers arbitrations. According deference to the views of the Securities and Exchange Commission, we concluded that the state law rules would not reduce arbitrator bias, but would significantly increase the costs of arbitration, and that the Act's purpose of investor protection would be undermined because the "average investor is less likely than the average brokerage firm to be able to afford the costs of protracted litigation." *Id.* at 1135-36. By contrast, we do not expect the average plaintiff-consumer or the average defendant-company to face higher arbitration costs as a result

_____

[9]Additionally, as consumers, corporations, lawyers and arbitration associations become more familiar with class arbitration, they may increasingly embrace the less formal and more flexible procedures and remedies that make arbitration desirable in the first place. *See* W. Mark C. Weidemaier, *Arbitration and the Individuation Critique*, 49 ARIZ. L. REV. 69, 96 (2007) ("The flexibility and informality of arbitration do not make it unsuitable for class litigation; quite the contrary. These attributes permit arbitrators to implement innovative procedures that courts have been hesitant to accept." (citations omitted)).

of class proceedings, and no agency to which we owe deference has reached a contrary conclusion.

Furthermore, if we were to hold that class arbitration conflicts with the Federal Arbitration Act in light of the Act's secondary concern of efficiency, the indisputable result would be to undermine the primary objective of encouraging arbitration because far fewer individual consumers will participate in arbitration absent the class action device. *See Amchem*, 521 U.S. at 617 (" 'The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.' " (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997))); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974) (stating that in a case involving small damages that the "[e]conomic reality dictates that [a plaintiff's] suit proceed as a class action or not at all"); *Kristian v. Comcast Corp.*, 446 F.3d 25, 54 (1st Cir. 2006) (" 'It would hardly be an improvement to have in lieu of this single class action 17,000,000 suits each seeking damages of $ 15.00 to $ 30.00 . . . . The *realistic* alternative to a class action is not 17,000,000 individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $ 30.00.' " (quoting *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004))).

Fifth, we read *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003), as an implicit endorsement by a majority of the Court of class arbitration procedures as consistent with the Federal Arbitration Act. *See Kinkel*, 857 N.E.2d at 262; *Discover Bank*, 36 Cal. 4th at 171-72. In *Bazzle*, having granted certiorari to consider whether the Supreme Court of South Carolina's holding that the contracts at issue authorized class arbitration was "consistent with the Federal Arbitration Act," a plurality of four concluded that an arbitrator — not the state court — should have determined whether an arbitration agreement that was silent on the issue of class arbitration did in fact authorize class proceedings. 539 U.S. at 454. However, in

remanding to the state court, the plurality made it clear that a class arbitration proceeding would be permissible if the arbitrator interpreted the contracts to allow for class arbitration procedures. *See id.* at 452-54 (citing *Volt*, 489 U.S. at 474-76). Supplying the fifth vote in support of the judgment of the Court, Justice Stevens explicitly stated that class arbitration is consistent with the Federal Arbitration Act: "[t]here is nothing in the Federal Arbitration Act that precludes . . . the[ ] determination[ ] by the Supreme Court of South Carolina" "that under state law class action arbitrations are permitted if not prohibited by the arbitration agreement." *Id.* at 454-55 (Stevens, J., concurring in the judgment and dissenting in part) (citing *Volt*, 489 U.S. at 475-76). Like other courts, we cannot accept Cingular's argument that class arbitration "conflict[s] with the FAA when the Supreme Court has recognized the arbitrability of class claims" under the Federal Arbitration Act in *Bazzle*. *Kinkel*, 857 N.E.2d at 262; *see also Discover Bank*, 36 Cal. 4th at 172.[10]

Finally, although Cingular claims that the alleged inefficiencies and risks of class arbitration will drive most businesses in California to abandon arbitration altogether if forced to permit class proceedings, it offers no empirical evidence to support this bold assertion. In fact, Cingular offers only a single example of a company that has rescinded its arbitration clause since the California Court of Appeal's decision in *Szetela* in 2002. Instead, hundreds of companies across the nation are currently engaging in and receiving the benefits of class arbitration. *See* AAA Class Arbitration Docket, http://www.adr.org/sp.asp?id=25562 (listing more than 175 class arbitration proceedings that are currently being administered

---

[10]Cingular's citation to *Iberia*, 379 F.3d at 174, and *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1378 (11th Cir. 2005), is misplaced, as those cases decided whether class action waivers were unconscionable on the basis of Louisiana and Georgia law, respectively, but not whether the Federal Arbitration Act impliedly preempts the application of state unconscionability principles to invalidate a class arbitration waiver.

under the AAA's "Supplementary Rules for Class Arbitrations").[11]

**[14]** For all of these reasons, we hold that applying California's generally applicable contract law to refuse enforcement of the unconscionable class action waiver in this case does not stand as an obstacle to the purposes or objectives of the Federal Arbitration Act, and is, therefore, not impliedly preempted.

## IV.    Conclusion

In sum, we hold that Cingular's class arbitration waiver is unconscionable under California law, and that refusing to enforce such a provision, as California courts would, is not expressly or impliedly preempted by the Federal Arbitration Act. Due to the non-severability clause, under California law Cingular's entire arbitration clause is void by its own terms. Accordingly, we reverse the district court's order compelling arbitration and remand for the district court to consider Shroyer's class action lawsuit.

REVERSED and REMANDED for further proceedings consistent with this opinion.

---

RYMER, Circuit Judge, concurring:

I concur as the result follows from our decisions in *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165 (9th Cir. 2003),

---

[11]Moreover, the deferential standard by which courts review arbitration judgments is no different in the class arbitration context than it is for individual arbitration, and Cingular's contention that no business would expose itself to a massive class arbitration award for which judicial review is limited is belied by the fact that sophisticated financial institutions and corporations routinely engage in individual arbitrations for disputes involving large sums of money.

*Ting v. AT&T*, 319 F.3d 1126 (9th Cir. 2003), and *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006) (en banc), as well as the California Supreme Court's decision in *Discover Bank v. Super. Ct. of L.A.*, 36 Cal. 4th 148 (2005).